Receipt number 9998-3866953

IN THE UNITED STATES COURT OF CLAIMS

FILED
MAR 27 2017
U.S. COURT OF
FEDERAL CLAIMS

**LEMON BAY COVE, LLC,**

    **Plaintiff,**

vs.                                                                    CASE NO.:   17-436 L

**UNITED STATES OF AMERICA**

    **Defendant.**

_____/

## COMPLAINT

COME NOW the Plaintiff, LEMON BAY COVE, LLC ("Lemon Bay"), by and through its undersigned attorneys, and hereby sues THE UNITED STATES OF AMERICA as follows:

### JURISDICTION

1. This is a three (3) count complaint seeking just compensation for the regulatory taking of Lemon Bay's waterfront land and vested statutory special riparian right to bulkhead and fill in the land. The taking results from the United States Army Corps of Engineers denial of Lemon Bay's application pursuant to Section 404 of the Clean Water Act for a permit to residentially develop a portion of the land.

2. This Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) and the Fifth Amendment to the United States Constitution.

### PARTIES AND INTERESTS AFFECTED

3. Lemon Bay is a Florida limited liability company in good standing. It owns 5.64 acres of privately owned submerged lands, mangroves and scattered small isolated uplands (the "Property"). See, Exhibit "1" attached hereto and made part hereof. The Property is located on

Sandpiper Key along Beach Road within unincorporated Charlotte County, Florida.

4. The Property abuts and lies partially beneath the tidal waters of Lemon Bay to the west and south and Beach Road to the north. Beach Road is a major arterial causeway connecting the south tip of Manasota Key with Englewood, Florida. The Property also abuts the approximately 215 unit Sandpiper Key Condominium to the east. See, Exhibit "2" attached hereto and made part hereof.

5. The United States of America, acting through the Department of Army's sub-agency, the Army Corps of Engineers ("ACOE"), regulates and is authorized to issue permits for the discharge of fill material into "waters of the United States" pursuant to Section 10 of the Rivers and Harbors Act (33 U.S.C. § 403) and Section 404 of the Clean Water Act (33 U.S.C. § 1344).

6. Virtually all the Property is located within "waters of the United States," and, therefore, any development of the Property requires a permit from the ACOE.

## FACTUAL BACKGROUND

7. On April 27 and June 21, 1954, pursuant to Sections 253.12 and 253.13, Florida Statutes (1953), the Governor and Cabinet of the State of Florida, sitting as the Trustees of the Internal Improvement Trust Fund (the "Trustees"), conveyed to Lemon Bay's predecessor-in-title by deeds two parcels of land consisting of submerged tidal lands and a mangrove island. The Property consists of a 5.64 acre portion of the two parcels as is more particularly described as follows:

> The Southerly 350 feet of the Northerly 1750 feet (measured along the Easterly Right-of-Way of State Road #776) of that part of Amended Plat of Holiday Isles, according to the Plat thereof, recorded in Plat Book 7, Page 51, Public Records of Charlotte County, Florida, lying Easterly of said State Road #776 and Southerly of a line extended perpendicular from the East Right of Way of State Road #776, Southeasterly from the intersection of the South line of Lot 37, of said Holiday Isles, and the Easterly Right of Way of said State Road, A/K/A Parcel 7.
>
> AND

>The Southerly 90 feet, more or less, of the Southerly 350 feet of the Northerly 1,400 feet (measured along the Easterly Right of Way of State Road #776) of that part of amended plat of Holiday Isles, according to the plat thereof, recorded in Plat Book 7, Page 51, Public Records of Charlotte County, Florida, lying Easterly of said State Road and Southerly of a line extended perpendicular from the East Right of Way of State Road #776 Southeasterly from the intersection of the South line of Lot 37, said Holiday Isles and the Easterly Right of Way of said State Road, A/K/A Parcel 6 LESS AND EXCEPT Sandpiper Key Condominium, as described in Condominium Book 3, Page 42A, Public Records of Charlotte County, Florida.
>
>AND
>
>All that land lying Southerly of a line running Southeasterly and perpendicular to the Easterly Right-of-Way line of State Road #776 which line is 1750 feet South (measured along the Easterly Right-of-Way line of State Road #776) of that part of Amended Plat of Holiday Isles, according to the Plat thereof, recorded in Plat Book 7, Page 51, Public Records of Charlotte County, Florida, lying Easterly of said State Road and Southerly of a line extended perpendicular from the East Right of Way of State Road #776 Southeasterly from the intersection of the South line of Lot 37, said Holiday Isles and the Easterly Right of Way of said State Road, A/K/A Parcel 8. LESS AND EXCEPT the real property judicially determined to belong to Sandpiper Key Condominium Association, Inc., a Florida corporation, in that certain Stipulated Final Judgment dated March 13, 2009, and recorded in Official Records Book 3372, at Pages 835 through 843, Public Records of Charlotte County, Florida.

8.   At the time of the sale of the Property by the Trustees to Lemon Bay's predecessor-in-title, Section 253.15 (1953), <u>Florida</u> <u>Statutes</u> provided that:

>In case any island or submerged lands are sold by the Trustees, according to the provisions of §§ 253.12 and 253.13, the purchaser shall have the right to bulkhead and fill in same, as provided by §309.01, without, however, being required to connect the same with the shore or with a permanent wharf.

9.   The sale of the Property into private ownership by the Trustees constituted the determination by the Trustees that it was in the public interest to part with the lands conveyed in order to reclaim them into useful upland property by bulkheading and filling.

10.   Under Florida law, the sale of the Property into private ownership by the Trustees carried with it a statutory right to bulkhead and fill in the lands conveyed pursuant to Section 253.15,

Florida Statutes. Under Florida law, these rights vested upon sale of the Property by the Trustees to Lemon Bay's predecessor-in-title.

11. Under Florida law, the statutory right to bulkhead and fill the Property pursuant to Section 253.15, Florida Statutes, is a form of property in the nature of a special riparian right to bulkhead and fill in the lands conveyed in order to convert them into useful uplands. Under Florida law, the special riparian right is appurtenant to, and passes with the fee simple title to the Property, and, as a form of property, includes the right to acquire, use and dispose of it.

12. The Property is part of the Holiday Isles Subdivision, a recorded residential subdivision approved and platted by Charlotte County.

13. The Property is designated "MDR", Medium Density Residential under Charlotte County's Future Land Use Map and is zoned RMF-10, Residential-Multi-Family. This land use and zoning allows single and multi-family residential development at a density of 10 units per acre for a total of 56 units.

14. Central water, sewer and electric utilities are available to serve residential development of the Property.

15. Vehicular access to and from the Property is via Beach Road the right-of-way of which abuts the Property's northern property line.

16. Most of the adjacent, nearby and surrounding waterfront property has been previously developed with waterfront single and multi-family residential and commercial uses. See, Exhibit "2", attached hereto and made a part hereof.

17. Lemon Bay acquired the Property on May 11, 2011 from a closely related entity I.H.T. Corporation, Inc. ("I.H.T."). I.H.T. had acquired the Property by foreclosure of a note and mortgage

given it by the then owner of the Property, Gerald LeFave, as security for a $750,000 loan from I.H.T. to LeFave.

18. LeFave sought to develop the Property with a 39-unit condominium project. While Charlotte County preliminarily approved the site plan for the 39-unit project in 2007, LeFave subsequently defaulted on the loan, I.H.T. Corporation foreclosed and took back title to the Property, and the principals of I.H.T. created Lemon Bay to own and develop the Property.

19. By virtue of its acquisition of the Property, Lemon Bay is the successors-in-title to the vested statutory special riparian right to bulkhead and fill the Property.

20. After acquiring the Property, Lemon Bay scaled back the size of the proposed project from a 39 unit condominium development on a 3.50 acre portion of the Property to a 12-unit single family townhome development on a 2.09 acre portion of the Property (the "Project").

21. In order to construct the Project it was necessary to remove the mangroves from and fill-in a 2.09 acre portion of the Property and to construct a retaining wall to contain the fill.

22. Lemon Bay applied for, and on December 20, 2012, the State of Florida Southwest Florida Water Management District ("SWFWMD") issued an Environmental Resource Permit ("ERP"). The ERP authorized placement of the fill and construction of the retaining wall required for the Project and approved, as mitigation for the impacts to the mangroves, the purchase of forested saltwater wetland credits from the federally approved Little Pine Island Mitigation Bank.

23. Issuance of the ERP constituted the State of Florida's determination that Lemon Bay had provided reasonable assurances that the adverse impacts to wetlands and surface waters from the Project had been eliminated or sufficiently reduced and adequately mitigated for, and that state-water quality discharge standards would be met.

24. On April 13, 2012, Lemon Bay filed with the ACOE an application for a permit to fill in 2.09 acres of mangroves to allow construction of the Project. Lemon Bay also sought ACOE approval of a 13-slip boat dock (collectively the "Application"). In addition to purchasing forested saltwater wetland credits from the federally approved Little Pine Island Mitigation Bank, Lemon Bay also proposed as mitigation for the impacts to mangroves to permanently preserve and donate to the State of Florida for the benefit of the public 3 acres of the remaining unimpacted portion of the Property consisting of mangroves and submerged lands. This donation would have enabled expansion of the Lemon Bay Aquatic Preserve.

25. On May 11, 2012, the ACOE deemed the Application complete.

26. The ACOE subsequently determined that the Project was not "water dependent" because its primary purpose was residential development. Therefore, under the ACOE's 404(b)(1) Guidelines, Lemon Bay was required to clearly rebut the presumption that less environmentally damaging practical alternatives involving filling of non-wetland sites are available to develop the Project. See, 40 C.F.R. § 230.10(a)(3). This requirement, known as LEDPA, mandates that if the applicant fails to clearly demonstrate to the ACOE that less environmentally damaging practical alternatives are not available, the ACOE must deny the 404 permit application.

27. Because the Property is virtually entirely wetlands, LEDPA required Lemon Bay to evaluate the potential acquisition and development of alternative waterfront properties within Southwest Florida which would involve less adverse environmental impact than would the Project.

28. The ACOE permit review process dragged on for the next three years and ten months. During this period the ACOE reviewed the Application, solicited agency and public comment, consulted with the United States Fish and Wildlife Service ("USFWS"), the United States

Environmental Protection Agency ("EPA"), and the National Marine Fisheries Service ("NMFS"), made various requests of Lemon Bay for additional information, received and, months later, reviewed and responded to Lemon Bay's responses to the requests, visited the site on a number of occasions and met several times with Lemon Bay's representatives.

29.     In order to comply with Charlotte County manatee protection guidelines, Lemon Bay reduced the number of proposed boat slips from 13 to 9.

30.     The USFWS, EPA, NMFS, and various environmental organizations, including the Lemon Bay Conservancy, the Environmental Conservancy of Southwest Florida, and the Friends of Cape Haze, Inc., all opposed issuance of the permit. The Sandpiper Key Condominium Association, on behalf of the residents of the adjacent approximately 215 unit Sandpiper Key Condominium and 411 separate individuals also objected to issuance of the permit.

31.     Finally, on February 1, 2016, three years and nine months after the ACOE first deemed the Application complete, the ACOE issued a letter denying the Application with prejudice. A copy the February 1 denial letter is attached hereto and made part hereof as Exhibit "3."

32.     The ACOE denied the Application based on its determination that: (i) Lemon Bay failed to show that it could not practically acquire and develop a less environmentally damaging alternative property; and (ii) the potential direct and indirect adverse ecological impacts of removal of mangroves and filling was unacceptable.

33.     On March 29, 2016, Lemon Bay administratively appealed the letter denial pursuant to 33 C.F.R. Part 331.

34.     On December 19, 2016, the ACOE by letter denied Lemon Bay's administrative appeal. The letter further states that the ACOE's February 1 denial letter constituted the ACOE's

"final permit decision."  A copy of the December 19, 2016 administrative appeal denial letter is attached hereto and made part hereof as Exhibit "4."

35. The ACOE has not suggested any alternative development or mitigation options to enable any development of the Property.

36. The ACOE denied the Application solely based on its findings that the Project would have unacceptable adverse effects on the environment, including mangroves and fish and wildlife.

37. In denying the Application, the ACOE found that the Project would have negligible impact on navigation.

38. The ACOE's actions make clear that it will not permit any removal of mangroves from, or filling of the Property.

39. The filling in of the Property for private development purposes would not have been and currently is not a nuisance under Florida common law.

## COUNT I

### INVERSE CONDEMNATION FOR TAKING WITHOUT COMPENSATION OF VESTED STATUTORY RIGHT TO BULKHEAD AND FILL THE PROPERTY

40.  Paragraphs 3-39 are hereby realleged and incorporated herein by reference.

41. The vested statutory special riparian right to bulkhead and fill the Property has no economically beneficial use and value without being able to exercise it by filling at least some portion of the Property to create developable and useable uplands.

42. The ACOE has prevented Lemon Bay from filling any portion of the Property by denying the Application.

43. The ACOE's denial of the Application deprives Lemon Bay of all of the economically

beneficial uses of the vested statutory special riparian right to fill the Property.

44. The ACOE, by its actions, has taken the vested statutory special riparian right to bulkhead and fill the Property.

45. Lemon Bay is entitled to be paid just compensation for the taking of the vested statutory special riparian right to bulkhead and fill the Property under the Fifth Amendment to the United States Constitution.

46. Neither the ACOE, the Department of Army nor the United States of America have offered Lemon Bay just compensation for the taking of the vested statutory special riparian right to bulkhead and fill the Property.

47. It has been necessary for Lemon Bay to retain counsel for the purpose of representing them in this matter. It also will be necessary for Lemon Bay to retain experts, including land use planners, real estate appraisers and other experts to prove its claims.

WHEREFORE, Lemon Bay respectfully pray that this Honorable Court: (i) find and conclude that a taking of Lemon Bay's vested statutory special riparian right to bulkhead and fill the Property occurred as a result of the ACOE's denial of the Application; (ii) enter an Order of Taking fixing a date of taking of the vested right to bulkhead and fill the Property as February 1, 2016; (iii) require the United States of America to deposit into the Registry of the Court its good faith estimate of the value of the property taken; (iv) conduct a bench trial to determine and award Lemon Bay's just compensation, including pre-judgment interest, for the taking of the vested statutory special riparian right to bulkhead and fill the Property; (v) award Lemon Bay their attorneys' fees and costs; and (vi) grant such other relief as is proper and necessary.

## COUNT II

**CLAIM OF INVERSE CONDEMNATION FOR TAKING WITHOUT COMPENSATION OF THE PROPERTY BASED ON DEPRIVATION OF ALL ECONOMICALLY BENEFICIAL USE OF LAND**

48. Paragraphs 3-39 are hereby realleged and incorporated herein by reference.

49. The Property has no economically beneficial use or value without the ability to remove mangroves and fill in a portion of the Property.

50. The ACOE's denial of the Application prevents Lemon Bay from being able to remove mangroves and fill in any portion of the Property and thereby deprives Lemon Bay of all economically beneficial use of the Property.

51. None of the remaining uses or rights retained by Lemon Bay in the Property are economically beneficial, productive or useful.

52. The ACOE, by its actions, has taken the Property.

53. Lemon Bay is entitled to be paid just compensation for the taking of the Property under the Fifth Amendment the United States Constitution.

54. Neither the ACOE, the Department of Army nor the United States of America have offered Lemon Bay just compensation for the taking of the Property.

55. It has been necessary for Lemon Bay to retain counsel for the purpose of representing it in this matter. It will be necessary for Lemon Bay to retain experts, including land use planners, real estate appraisers and other experts to prove its claims.

WHEREFORE, Lemon Bay respectfully pray that this Honorable Court: (i) find and conclude that a taking of the Property occurred as a result of the ACOE's denial of the Application; (ii) enter an Order of Taking fixing a date of taking as February 1, 2016; (iii) require the United States of America to deposit into the Registry of the Court its good faith estimate of the value of the property

taken; (iv) conduct a bench trial on and award Lemon Bay just compensation, including pre-judgment interest, for the taking of the Property; (v) award Lemon Bay their attorneys' fees and costs; and (vi) grant such other relief as is proper and necessary.

## COUNT III

### ALTERNATIVE CLAIM OF INVERSE CONDEMNATION OF THE PROPERTY BASED AD HOC FACTUAL INQUIRY UNDER *PENN CENTRAL TRANSPORTATION. CO. V. CITY OF NEW YORK.*

56. Paragraphs 3-39 are hereby realleged and incorporated herein by reference.

57. Lemon Bay has a legitimate, distinct investment-backed expectation in the use and development of the Property for residential purposes by virtue of, without limitation: (i) the sale and conveyance of the Property to Lemon Bay's predecessor-in-title by the Trustees as constituting the State of Florida's determination that the filling of the Property would not be harmful to the public interest; (ii) the sale and conveyance of the Property into private hands by the Trustees with the appurtenant statutorily vested special riparian right to bulkhead and fill in the Property that passes with title to the Property; (iii) Charlotte County's approval and platting of the Holiday Isles Subdivision; (iv) Charlotte County's land use designation and zoning of the Property to allow residential development; (v) Charlotte County's preliminary approval of a site plan for a 39-unit condominium development on the Property; (vi) SWFWMD's issuance of the ERP authorizing development of the Project; and (vii) similar nearby and adjacent waterfront development, including waterfront development previously authorized by the ACOE.

58. The ACOE's denial of the Application interferes with Lemon Bay' legitimate investment-backed expectations in the economically beneficial development and use of the Property.

59. The Property, if it can be developed and used for residential purposes, is estimated to

be worth at least $3.5-4.5 million, possibly substantially more.

60.     The ACOE's denial of the Application visits great economic harm upon Lemon Bay by: (i) effectively rendering the Property useless except possibly for passive recreational use of the shoreline by boaters; and (ii) drastically diminishing the value of the Property so as to render it virtually worthless.

61.     The public interest in the Property and the surrounding lands and overlying waters including the aesthetic and ecological function and value of Lemon Bay, the public recreational opportunities Lemon Bay provides, and the fish and wildlife that inhabit Lemon Bay will not be substantially impaired or harmed by filling of the Property.

62.     The ACOE's denial of the Application confers benefits upon the public by preserving the aesthetic and ecological value and function of the Property and by effectively reserving for the benefit of the public passive recreational use the shore line of, and waters overlying the Property.

63.     The burden of loss of use and value of the Property imposed upon Lemon Bay by the ACOE's denial of the Application is a burden properly borne by the public as a whole, rather than by Lemon Bay for, without limitation, the following reasons: (i) Lemon Bay and its principals have distinct investment backed expectations in the development and use of the Property; (ii) the magnitude of economic harm to Lemon Bay resulting from the ACOE's denial of the Application is great; (iii) development of the Project would have relatively minimal adverse impact to the public and the environment, including Lemon Bay and the fish and wildlife that inhabit it; and (iv) the ACOE's actions effectively preserve the Property and the waters overlying the Property in their entirety in a natural state for the enjoyment and use of the general public.

64.     The ACOE, by its actions, has taken the Property.

65. Lemon Bay is entitled to be paid just compensation for the taking of the Property under the Fifth Amendment to the United States Constitution.

66. Neither the ACOE, the Department of Army nor the United States of America have offered Lemon Bay just compensation for the taking of the Property.

67. It has been necessary for Lemon Bay to retain counsel for the purpose of representing them in this matter. It will be necessary for Lemon Bay to retain experts, including land use planners, real estate appraisers and other experts to prove its claims.

WHEREFORE, Lemon Bay respectfully pray that this Honorable Court: (1) find and conclude that a taking of the Property occurred as a result of the ACOE's denial of the Application; (2) enter an Order of Taking fixing a date of taking of February 1, 2016; (3) require the United States of America to deposit into the Registry of the Court its good faith estimate of the value of the property taken; (4) conduct a bench trial to determine and award Lemon Bay just compensation, including pre-judgment interest, for the taking of the Property; (5) award Lemon Bay their attorneys' fees and costs; and (6) grant such other relief as is proper and necessary.

SMOLKER BARTLETT LOEB HINDS
AND SHEPPARD, P.A.

By:   /s/ David Smolker
      David Smolker
      Florida Bar No. 349259
      100 North Tampa Street, Suite 2050
      Tampa, Florida 33602
      Tel. 813-223-3888
      Fax: 813-228-6422
      E-Mail: davids@smolkerbartlett.com
      Attorneys for Plaintiff,
      LEMON BAY COVE, LLC